UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **DARRYL WILLIAMS** | **CIV. ACTION NO. 5:23-00911** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **MARTIN O' MALLEY, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT & RECOMMENDATION

Before the court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

On, or about January 20, 2016, Darryl Williams filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments. (Tr. 325-334, 341-342). On July 11, 2016, the state agency granted Williams' application(s) and found him disabled beginning on January 8, 2016. *See* Tr. 10, 34.

As early as August 2018, the state agency initiated a continuing disability review ("CDR") to determine whether Williams' disabling conditions had experienced medical improvement. *See* Tr. 388-405. Following its investigation, the state agency determined on or about March 7, 2019, that, as of March 1, 2019, Williams had experienced medical improvement, and therefore, his benefits would terminate effective May 2019. (Tr. 112, 114-122, 151-153). Williams asked the state agency to

reconsider its decision, and elected to continue receiving benefits during the appeal process. (Tr. 155-159). A disability hearing officer considered Williams' request, but in an October 9, 2019, decision, found that his disability had ceased. (Tr. 165-176).

Thereafter, Williams requested and ultimately received a March 17, 2021 hearing and a June 24, 2021 supplemental hearing before Administrative Law Judge ("ALJ") David Benedict. (Tr. 72-103). However, because of ALJ Benedict's subsequent "unavailability," the case was reassigned to ALJ Richard Exnicios, who held an additional hearing on October 12, 2021. (Tr. 10, 31-50). In an October 27, 2021 written decision, the ALJ determined that Williams' disability had ended as of March 1, 2019, and that he had not become disabled again since that date. (Tr. 125-137).

Williams petitioned the Appeals Council to review the unfavorable decision. On April 1, 2022, the Appeals Council granted the request for review, vacated the ALJ decision, and remanded the case for further proceedings because the ALJ had applied the new rules, rather than the prior rules that were in effect in 2016 at the time of Williams' initial application(s). (Tr. 144-150). The Appeals Council instructed the ALJ, on remand, to give further consideration to the treating and non-treating source opinions. *Id*.

Pursuant to the remand order, ALJ Exnicios held a fourth administrative hearing on September 8, 2022. (Tr. 51-71). However, in a December 29, 2022, written decision, the ALJ again determined that Williams' disability ended as of March 1, 2019, and that he had not become disabled again since that date. (Tr. 7-20).

Williams appealed the adverse decision to the Appeals Council. On May 10, 2023, however, the Appeals Council denied Williams' request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-4).

On July 7, 2023, Williams, who is acting pro se in this matter, filed the instant complaint for judicial review of the Commissioner's final decision. The matter is fully briefed and ripe for decision.

## **Standard of Review**

This court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). The Supreme Court has emphasized that

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 587 U.S. ___, 139 S.Ct. 1148, 1154 (2019) (internal citations omitted). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – *unless* the Commissioner applied an incorrect legal standard that materially influenced the decision. See 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

## **Cessation of Disability**

Federal law provides that "[i]n any case where an individual is or has been determined to be under a disability, the case shall be reviewed by the applicable State agency or the Commissioner of Social Security (as may be appropriate), for purposes of continuing eligibility at least once every 3 years . . ." 42 U.S.C. § 421(i) (emphasis added). However, a disability recipient's benefits "may be terminated only if substantial evidence demonstrates *both* that 'there has been any medical improvement' *and* that 'the individual is now able to engage in substantial gainful activity.'" *Hallaron v. Colvin*, 578 F. App'x 350, 353 (5th Cir. 2014) (citing 42 U.S.C. § 1382c(a)(4)(A)).

The Commissioner has prescribed regulations to implement the foregoing requirement. Specifically, a disability recipient's benefits will be terminated only where the Commissioner determines:

    a)    that there has been medical improvement in the individual's impairments that is related to the individual's ability to work;[1]

    b)    or that one or more exceptions to medical improvement applies; and

    c)    in addition to (a) or (b), that the individual is currently able to engage in substantial gainful activity.

*See* 20 C.F.R. § 416.994.

In evaluating the above-enumerated issues, the Commissioner employs a multi-step sequential analysis:

    1.    At the first step, the Commissioner must consider whether the claimant has an impairment or combination of impairments that meets

---

[1] The regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(i).

or equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. If so, disability will be found to continue.

2. If the claimant's impairments do not meet or equal a listing, then, at step two, the Commissioner must determine whether there has been medical improvement. If so, then step three is considered; if not, then the review proceeds to step four.

3. If there has been medical improvement, then, at step three, the Commissioner must determine whether it is related to the claimant's ability to work, i.e., whether or not there has been an increase in residual functional capacity based on the impairment(s) at the most recent favorable medical determination. If the medical improvement is not related to the ability to work then, the Commissioner proceeds to step four. If it is related to the ability to work, then the Commissioner proceeds to step five.

4. If there was no medical improvement at step two, or if the medical improvement was not related to the claimant's ability to work at step three, the Commissioner must determine whether an exception applies. If no exception applies, then disability continues. If one of the first group of exceptions applies to medical improvement, then the Commissioner will proceed to the next step. If an exception from the second group of exceptions to medical improvement applies, then the Commissioner will find that the claimant's disability has ended.

5. If there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions to medical improvement applies, then the Commissioner must consider whether the claimant's current impairments in combination are severe. If the claimant's impairments are not severe, then the claimant is no longer disabled. If they are severe, then the analysis proceeds to the next step.

6. If the impairments are severe, the Commissioner will assess the claimant's residual functional capacity in light of current impairments and determine whether the claimant is able to return to past relevant work. If so, then disability has ended. If not, then the analysis proceeds to the next step.

7-8. At the last step, the Commissioner must determine whether the claimant can perform other work, given the claimant's age, education, work experience, and residual functional capacity. If so, then the claimant is no longer disabled. If not, then disability continues.

20 C.F.R. § 416.994(b)(5) (paraphrased). The review may cease and benefits may be continued at any point in the analysis that the Commissioner determines that there is sufficient evidence to find that the individual is still unable to engage in substantial gainful activity. *Id*.

In a continuing disability review applying the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citations omitted).

## The ALJ's Decision

The ALJ determined that the most recent favorable medical decision finding the claimant disabled was issued on July 11, 2016. (Tr. 13). This serves as the "comparison point decision" or "CPD." *Id*., *see also* 20 C.F.R. § 416.994(b)(1)(vii). The ALJ further determined that, at the time of the CPD, the claimant suffered from medically determinable impairments of Marfan's syndrome associated with severe arch dilation, sickle cell trait syndrome, obstructive sleep apnea, and narcolepsy, which were found to medically equal section 4.02A-B of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d)). *Id*.

The ALJ found at step one of the sequential evaluation analysis that, as of March 1, 2019, the claimant had the following medically determinable impairments: "obstructive sleep apnea, narcolepsy and cataplexy, effects of stroke, atrial fibrillation, effects of Marfan's syndrome, effects of aortic aneurysm repair, and sickle cell trait syndrome." *Id*. However, he further found that, since March 1, 2019, the impairments did not meet or medically equal the severity of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. *Id*.

At step two of the analysis, the ALJ determined that the claimant experienced medical improvement as of March 1, 2019, because the claimant had undergone aortic aneurysm repair in

6

September 2016, and, in 2018, an echocardiogram revealed mild dilation of the ascending aorta, with an ejection fraction of 55 percent. (Tr. 13-14). Furthermore, on March 6, 2019, a state agency medical consultant, Patrick Fields, M.D., reviewed the record and determined that medical improvement had occurred. *Id*.

At step three, the ALJ found that the medical improvement was related to the ability to work because, by March 1, 2019, the claimant's impairments no longer met or equaled the same listing that supported the disability finding at the time of the CPD. (Tr. 14).

At step five, the ALJ found that, since March 1, 2019, the claimant had severe impairments of narcolepsy, cataplexy, and obstructive sleep apnea. (Tr. 14). However, he further determined that the effects of stroke, atrial fibrillation, effects of Marfan's syndrome, effects of aortic aneurysm repair, and sickle cell trait syndrome were non-severe. *Id*.

The ALJ next determined that, since March 1, 2019, the claimant had a residual functional capacity ("RFC") for light work,[2] "with seizure-like precautions, including no climbing of ladders,

---

[2] Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

ropes, and scaffolds; no unprotected heights; no driving; no open flames; no working over water; and no hazardous machinery." (Tr. 14).

The ALJ concluded at step six of the sequential evaluation process that the claimant was unable to perform past relevant work because he had none. (Tr. 19-20). Accordingly, he proceeded to the penultimate step where he found that the claimant was a younger individual (27 years old on March 1, 2019), with at least a high school education, and the ability to communicate in English. *Id*. Transferability of skills was not material to the decision. *Id*. The ALJ observed that, given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, then the medical-vocational guidelines would direct a finding of *not disabled* as of March 1, 2019. 20 C.F.R. § 416.969; Rule 202.20, Appendix 2, Subpart P, Regulations No. 4. *Id*.

However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent his limitations eroded the occupational base for unskilled work at all exertional levels. *Id*. In response, the VE identified the representative jobs of sales attendant – light, *Dictionary of Occupational Titles* ("DOT") Code # 299.677-010; office helper – light, DOT Code # 239.567-010; and cleaner - light, DOT Code # 323.687-014, which were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 19-20, 45-46).[3]

Therefore, the ALJ concluded that the claimant's disability ended on March 1, 2019. (Tr. 20).

---

[3] The VE stated in his response to interrogatories that for the sales attendant, office helper, and cleaner jobs, there were 250,000, 50,000, and 150,000 positions available nationally, respectively. (Tr. 19-20  45-46). This incidence of jobs constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

## Analysis

Williams advanced three principal arguments in his brief to this court: 1) the record does not contain a mental RFC from any agency psychologist or even the ALJ; 2) the ALJ failed to provide good cause for discounting the opinion of his treating physician; and 3) the ALJ failed to fully and fairly develop the record by not obtaining a consultative examination. The unifying theme of Williams' arguments is that the ALJ did not appreciate, or account for, the mental effects of his narcolepsy at the various steps of the sequential evaluation process, an error that substantially affected his rights. The court is constrained to agree.

In this case, the ALJ determined that, as of March 1, 2019, Williams' severe impairments consisted of narcolepsy, cataplexy, and obstructive sleep apnea. *Id*. Narcolepsy is listed as a mental impairment in both the fourth and fifth editions of the American Psychiatric Ass'n *Diagnostic and Statistical Manual of Mental Disorders*. Furthermore, according to the SSA's Program Operations Manual System ("POMS"),

> [n]arcolepsy is a chronic neurological disorder characterized by recurrent periods of an irresistible urge to sleep accompanied by three accessory events:
>
> 1. Cataplexy—attacks of loss of muscle tone, sometimes with actual collapse, during which the individual always remains conscious.
>
> 2. Hypnagogic hallucinations—hallucinations which occur between sleep and wakening.
>
> 3. Sleep paralysis—a transient sensation of being unable to move while drifting into sleep or upon awakening. In addition, some persons have periods of automatic behavior and most have disturbed nocturnal sleep.

(POMS DI 24580.005).[4] While the SSA does not include a specific listing for narcolepsy, the SSA has recognized that, "when evaluating medical severity, the closest listing to equate narcolepsy with is Listing 11.02, Epilepsy." *Id*.

The listings set forth in 20 C.F.R. pt. 404, subpt. P, App. 1 are descriptions of various physical and mental illnesses and abnormalities that are categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529–31; 110 S.Ct. 885, 891 (1990). Each impairment is defined in terms of specific medical signs, symptoms, or laboratory test results. *Id*. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*.; *see also* 20 C.F.R. §§ 404.1525(d) and 416.925(d). Further, an impairment(s) is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. §§ 404.1526(a) and 416.926(a). Again, however, "[t]he claimant must provide medical findings that support each of the criteria for the equivalent impairment determination." *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citations omitted).

At the time the ALJ issued his decision, Listing 11.02 included four paragraphs, A, B, C, and D, two of which recognized disability based on a certain frequency of seizures, plus a marked limitation in physical functioning; understanding remembering or applying information; interacting with others; *concentrating, persisting, or maintaining pace*; or adapting or managing oneself. *See* 20

---

[4] "POMS are not binding on the Commissioner, but they may be viewed as binding on an ALJ in a case that falls squarely within one of the provisions." *Taylor v. Saul*, Civ. Action No. 18-0765, 2019 WL 4667515, at *4 (N.D. Tex. Sept. 25, 2019) (citation omitted). Moreover, the Fifth Circuit has recognized that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (quoting *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981)).

C.F.R. pt. 404, subpt. P, App. 1, § 11.02. In addition, the introductory paragraph of Listing 11.00 provides that, if the claimant's "neurological disorder results in only mental impairment or if [the claimant has] a co-occurring mental condition that is not caused by [the claimant's] neurological disorder . . . [the Commissioner] will evaluate [the] mental impairment under the mental disorders body system, 12.00." *Id*. § 11.00A.[5]

In this case, the ALJ found that Williams' "physical" impairments did not meet or equal listings 3.01, 4.01, 4.02, 7.01 or any other listing. (Tr. 13). He further noted that "no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal a listed impairment. no acceptable medical source." *Id*. However, the record does not indicate that the ALJ specifically contemplated whether Williams' narcolepsy medically equaled listing 11.02 or a mental disorder under 12.00.

The court recognizes that, since 2017, an ALJ no longer is required to articulate specific evidence to support his finding that a claimant's impairment(s) does not medically equal a listed impairment. *See* SOC. SEC. RULING (SSR) 17-2P: TITLES II & XVI: EVIDENCE NEEDED BY ADJUDICATORS AT THE HEARINGS & APPEALS COUNCIL LEVELS OF THE ADMIN. REVIEW PROCESS TO MAKE FINDINGS ABOUT MED. EQUIVALENCE (Mar. 27, 2017) ("SSR 17-2P").[6] However, SSR 17-2P

---

[5] Listing 11.02, and the introductory paragraphs to listing 11.00 were amended in 2017. The 2016 version of listing 11.02 did not include paragraphs C and D, and the listing's introductory paragraphs did not discuss mental limitations of functioning. It is unclear whether the 2016 or the 2022 version of listing 11.02 governs in this case. Nonetheless, even if the former version of 11.00 and 11.02 applies, it stands to reason that Williams' narcolepsy, which is a recognized mental disorder, should have been analyzed under listing 12.00 for mental disorders.

[6] Although social security rulings are not binding on the federal courts, *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), they are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

further contemplates that the ALJ will provide sufficient reasoning at a later step in the sequential evaluation process for a court to determine the basis for the ALJ's medical equivalence determination. *Id*. Here, that reasoning is either missing or unsupported.

For example, when evaluating the severity of mental impairments, the Commissioner is obliged to apply a "special technique." 20 C.F.R. §§ 404.1520a and 416.920a. If the Commissioner determines that the claimant has a medically determinable mental impairment(s), then the Commissioner must rate the degree of functional limitation resulting from the impairment(s). 20 C.F.R. §§ 404.1520a(b) and 416.920a(b). The four broad functional areas track the same areas contemplated in paragraph B of the mental impairment listings, i.e., understand, remember, or apply information; interact with others; *concentrate, persist, or maintain pace*; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). The special technique is completed at the initial, reconsideration, and at the administrative law judge levels. 20 C.F.R. §§ 404.1520a(e) and 416.920a(e).

In this case, neither the ALJ, nor any state agency psychological consultant completed the special technique. To be sure, "procedural perfection in administrative proceedings is not required" so long as "the substantial rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988)). However, the court is unable to conclude that the ALJ's omissions did not affect Williams' substantial rights.

Williams testified consistently that his impairments did not present any issues with walking standing, sitting, lifting, etc. *See* Tr. 43, 94. Instead, the principal obstacle to his ability to work stemmed from the combination of his heart condition and cerebrovascular event which prevented him from taking stimulants to address the effects of his narcolepsy. *See* 62-63. Without the

12

medication, narcolepsy causes Williams to suffer daytime sleepiness and drowsiness that he treated by taking naps every four to six hours, each lasting from fifteen minutes to two hours in length. (Tr. 62-63, 90-91, 166).[7] Of course, at one of the several hearings held in this matter, a vocational expert testified that if a hypothetical individual were off-task at least fifteen percent of a workday, then he would not be able to maintain full-time employment. (Tr. 99).

Williams' testimony is supported by the opinion of his treating neurologist, Oleg Chernyshev, M.D. In an August 26, 2021 To Whom it May Concern letter, Dr. Chernyshev wrote that Darryl Williams was under his care for management of narcolepsy with cataplexy and obstructive sleep apnea. (Tr. 838). He explained that, because of Williams' cardiovascular and cerebro-vascular conditions, they could not administer standard anti-narcolepsy medications called stimulants. *Id*. At that time, Williams used a breathing machine to control OSA and traditional behavioral/medical therapies to control narcolepsy-related symptoms such as excessive daytime sleepiness, excessive daytime fatigue, and fragmented sleep, which only partially controlled his narcolepsy symptoms. *Id*.

Williams reported being fatigued, tired, sleepy all the time and unable to perform any mental or physical work because "he cannot control his body well," and "cannot focus on any task to be completed." *Id*. In light of the foregoing medical conditions, Chernyshev opined that Williams would not be able to perform any mental or physical work that required "vigilance and mental concentration as well as physical stamina." *Id*. He was advised to stop driving and operating heavy

---

[7] The court notes that there is evidence that Williams has poor sleep habits and questionable compliance with his CPAP. *See, e.g.*, Tr. 41, 59, 756-759. Upon remand, the Commissioner may need to explore to what extent Williams' daytime sleepiness may be volitional and/or caused by his failure to abide prescribed treatment. In addition, Dr. Chernyshev suggested Pitolisant as a possible treatment for Williams' condition. *See* Tr. 768-772.

machinery. *Id*. Chernyshev concluded that, in his opinion, supported by objective criteria, Williams was eligible for permanent disability benefits. *Id*.

In his decision, the ALJ stated that he accorded Dr. Chernyshev's opinion "some weight," because he deemed the restrictions on driving and operating heavy machinery to be well-supported and consistent with the record as a whole. (Tr. 18). However, the ALJ discounted Chernyshev's statement that Williams "would not be able to perform any mental or physical work that requires vigilance, mental concentration, and physical stamina," because it was vague, unsupported by treatment notes, and inconsistent with the record as a whole. *Id*. Needless to say, he also rejected Chernyshev's statement that Williams was eligible for disability because, under the regulations, that is an issue reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d) (2016).

The court observes that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted). Furthermore, the ALJ cannot simply "pick and choose" those portions of the medical provider's findings that support his decision and discard the remainder. *Loza, supra*.

In discounting Dr. Chernyshev's limitations regarding vigilance, mental concentration, and physical stamina the ALJ relied heavily upon Williams' ability to complete a graduate program abroad, despite his impairments. (Tr. 18). However, in his prior appeal brief, Williams stated that he consistently fell asleep during classes in school, which he compensated for by studying during other times of the day. (Tr. 289). The ALJ acknowledged that he had read Williams' correspondence to the Appeals Council, in which Williams had "very articulately point[ed]out how [he] disagreed with

14

[his] assessment of that correlating ability to get education and travel overseas and so forth with your ability to work." (Tr. 69). Moreover, the vocational expert testified that a hypothetical claimant who required standard, but unpredictable breaks during a workday represented an accommodation that would affect competitive employment. (Tr. 46-47).

In short, the court is not persuaded that the ALJ's reliance on Williams' ability to complete a graduate degree program abroad provides good cause to discount Dr. Chernyshev's limitations and to support a finding that Williams' narcolepsy did not impair his ability to complete the mental requirements of a typical eight-hour workday.

In addition, the Fifth Circuit has remarked that, "*absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist*, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453 (emphasis added). In this case, there was no other evidence from a treating or examining physician that controverted the impression of Williams' treating specialist. Therefore, the ALJ was obliged to address each of the § 416.927(c)[8] factors. Here, there is no indication that the ALJ engaged in a "detailed analysis" of the pertinent criteria before rejecting the limitations recognized by Dr. Chernyshev.

The court further notes that the ALJ assigned "significant weight" to the opinions of the non-examining, state agency medical consultants, Patrick Fields, M.D., and Hollis Rogers, M.D. (Tr. 18).

---

[8] Section 416.927 is the SSI analogue to § 404.1527. Furthermore, the paragraph (d)(2) criteria referenced in *Newton* were moved to paragraph (c). Also, per the Appeals Council's remand order, the 2017 changes to the consideration of medical opinions do not apply in this cessation case where a finding of disability issued prior to the amendment. *See* Tr. 145.

While the opinions of these physicians plainly provide support for the ALJ's RFC regarding the effects of Williams' physical impairments, they do not specifically contemplate the limitations imposed by Williams' narcolepsy. In fact, the ALJ had to part company with the agency physicians' opinions because they did not include the need for seizure-like precautions stemming from Williams' narcolepsy. *See* Tr. 18. Moreover, for claims filed prior to March 27, 2017, "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added).[9] Therefore, the ALJ was not permitted to rely on the opinions of the agency physicians where they conflicted with that of the examining, treating specialist.

In sum, the ALJ's assessment of the effects of Williams' impairments (specifically narcolepsy) is not supported by substantial evidence, i.e., any cognizable medical opinion or Williams' own testimony and activities. The error affected Williams' substantial rights because the ALJ's findings at multiple steps of the sequential evaluation process were premised upon the unsupported assessment.

The courts enjoy the authority to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

---

[9] A non-examining physician/psychologist's opinion also does not provide good cause for an ALJ to discount the findings of an examining physician. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (addressing ALJ's reliance upon non-examining physician's opinion to discount findings of treating physician). The Fifth Circuit cited *Lamb* for the proposition that the reports of non-examining physicians do not provide substantial evidence when the non-examining physician's medical conclusions "contradict or are unsupported by findings made by an examining physician." *Villa, supra* (citing, *Lamb, supra*; and *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)).

16

Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir. 1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial, and the record clearly showed the claimant's right to benefits).

The instant record is not so disposed. At minimum, the effects of Williams' narcolepsy remain indeterminate. Upon remand, the Commissioner may seek to obtain a medical source statement from Dr. Chernyshev. Alternatively, or in addition, the Commissioner may obtain a consultative examination from a neurologist, together with an associated medical source statement. Armed with that additional evidence, the ALJ may employ a medical consultant to assist with a medical equivalency determination.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 26th day of April, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE